David L. Mortensen (USB No. 8242)
*david.mortensen@stoel.com*
R. Chad Pugh (USB No. 14035)
*chad.pugh@stoel.com*
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131

Attorneys for Plaintiff
John Probst

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN PROBST, an individual; and JOHN DOES 1-40,<br><br>Plaintiffs,<br><br>v.<br><br>MIDWAY CITY, a Utah Municipal Corporation,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 2:18-cv-00344-PMW<br><br>The Honorable Paul M. Werner |

Plaintiff John Probst ("Probst" or "Plaintiff"), by and through his counsel, hereby complains against defendant Midway City (the "City), and for his causes of action alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Probst is an individual who resides and works in Wasatch County, Utah.

2.    Plaintiffs John Does 1-40 are potential residents of the residential treatment facility at issue and who are individuals with physical or mental impairment that

substantially limits one or more major life activities, or individuals having a record of such an impairment or being regarded as having such an impairment.

3.      The City is a political subdivision of the State of Utah and is organized under the laws of the State of Utah.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 42 U.S.C. § 3613(a)(l)(A).

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over state law claims asserted herein.

6.      Venue is properly placed in this District and Division pursuant to 28 U.S.C. § 1391(b).  The actions of the defendant giving rise to this action took place in Wasatch County, Utah.

## GENERAL ALLEGATIONS

**The Residence**

7.      Probst is the owner of a dwelling located at 430 West 200 North in Midway, Utah (the "Residence").

8.      The Residence is uniquely situated for use as a residential treatment facility.  The Residence sits on a 3.14 acre lot and has over 12,500 square feet, with 10 bedrooms and 10 bathrooms.  The Residence is situated at the end of a long driveway and because of the set-back has no immediate neighbors.

9.      Pursuant to Utah state law, the Residence has capacity to house up to forty residents in a residential treatment facility (i.e. a maximum of four residents per bedroom).

**Utah Department of Human Services License Requirements**

10.     To operate a residential treatment facility, state law requires the applicant to obtain a license from the Utah Department of Human Services ("DHS") and provide notice to the local governmental authority pursuant to Utah Code Ann. § 62A-2-108.2.

11.     To obtain a DHS License, the applicant must provide information directly to DHS and meet certain other requirements.  The only requirement involving the City is procuring a local business license.  No other City approval is required.

**The City Initially Approves the Facility**

12.     In August 2017, Kokua UT, LLC ("Kokua") and Probst approached the City in good faith to discuss its intent to operate a residential treatment facility at the Residence (the "Facility").

13.     The proposed Facility would specialize in providing treatment for young women, ages thirteen to eighteen, who were committed to recovery and struggle with addictions, but have already been through an extensive detoxification program.

14.     This being the case, the residents have "disabilities," as defined by Utah Code Ann.§ 57-21- 2(9), "handicaps" as defined by 42 U.S.C. § 3602(h), and are considered "qualified individuals with a disability" under 42 U.S.C. § 12131.

15.     The Facility would provide clinical services, opportunities to continue academic pursuits, and programs to encourage physical, mental and emotional health.  No supervisory staff would reside in the Residence.

16.     On August 21, 2017, Probst and Mrs. Probst, together with their real estate broker Clint Kelson, met with Midway's City Planner Michael Henke (the "City Planner") to discuss the

Facility.  During the meeting, the City Planner said the City could not do anything to prevent operation of the Facility and that there was no City ordinance that could prevent the Facility from obtaining a business license.

17.     The next day, on August 22, 2017, Probst and Caleb Cottle, executive director of Kokua, met with the City's attorney Corbin Gordon (the "City Attorney") to discuss the Facility. During the meeting, the City Attorney confirmed that the City could not prevent the Facility from operating and that there was no City ordinance that could prevent the Facility from obtaining a business license.

18.     On September 27, 2017, the City Attorney spoke with Mr. Kelson over the telephone and said that the Facility could move forward and that there was no City ordinance that could prevent the Facility from obtaining a business license.

19.     On October 3, 2017, City Attorney Corbin Gordon sent a letter to Mr. Kelson regarding the Facility.  In the letter, Mr. Gordon summarized a legal memorandum that Mr. Gordon had prepared for City Staff wherein he advised the City that "the Utah Fair Housing Act does apply and that the City cannot deny an application for a residential treatment facility, unless [the Facility] intends on treating current users of illegal controlled substances, persons convicted for illegal manufacture or distribution of a controlled substances . . .which are not considered "disabled under the Fair Housing Act."

20.     Based upon these representations and because the Facility fully complied with all applicable zoning requirements in the Midway City Code (the "Code"), Probst entered into a lease agreement (the "Lease") with Kokua to lease the Residence to Kokua to operate the Facility.

21.    The term of the Lease was five years, with an option to extend the Lease another five years.

22.    In addition, in reliance upon the City's confirmation that the Facility fully complied with all zoning requirements, Probst installed a fire suppression system throughout the Residence as required under state law to operate a residential treatment facility with more than 16 residents.

**The City Reverses Course and Takes Action to Stop the Facility**

23.    Shortly after the City Planner and City Attorney confirmed that the Facility fully complied with all zoning requirements, the City began taking action to prevent the Facility from operating.  In addition, the City has taken steps to ensure that operating the Facility is practically and economically unfeasible. Taken together, these actions demonstrate intent by the City to discriminate against and prevent the Facility from operating.

24.    For example, on October 25, 2017, without notice to Probst or Kokua and in a clear attempt to thwart the Facility, the City rushed to pass Resolution 2017-28, which was a vague notice stating that the City was considering a "possible ordinance regarding residential treatment facilities."  Resolution 2017-28 did not propose any specific regulations that might impact the occupancy limits for residential treatment facilities, nor did it identify any specific Code sections that might be amended.

25.    After the City passed Resolution 2017-28, the City reneged on its prior informal approval of the Facility and began arguing that the Facility was subject to a "pending ordinance" and that Kokua's proposed use would be prohibited by the pending ordinance.

26.     On November 6, 2017, as required by Utah Code Ann. §62A-2-108.2, Probst and Kokua formally sent the City notice of its intent to operate the Facility at the Residence. In addition, the letter notified the City that Resolution 2017-28 did not qualify as a "pending ordinance" because the City had not formally initiated proceedings to amend the applicable land use regulation "in a manner that would prohibit approval" of Kokua's application as submitted as required under U.C.A. § 10-9a-509(1)(a)(ii)(B).

27.     In actuality, Resolution 2017-28 failed to invoke the pending ordinance doctrine because it lacks any proposed amendments that "would prohibit approval" of Kokua's business license. Nor does it prohibit residential treatment facilities from being approved prior to the adoption of an ordinance amendment.

28.     In response to this letter, the City Council promptly revised its meeting minutes with respect to its October 25, 2017 meeting, to make it appear that the City intended to impose occupancy limitations on residential treatment facilities.

29.     On December 4, 2017, Kokua applied for a Home Occupation Business License to operate the Facility at the Residence in accordance with state law. At the time of the application, the only occupancy limit on the Facility arose under state law which limits the number of occupants in a residential treatment facility to four residents per bedroom.

30.     On January 5, 2018 the City notified Kokua that it could not process Kokua's applications for several reasons, none of which had merit.

31.     For example, the City alleged that Kokua had failed to pay a $30 application fee even though the fee requirement did not exist at the time of Kokua's application. On information

and belief, the City revised its form application to require a $30 fee after Kokua had submitted its application.

32.     On January 11, 2018, Kokua provided the City with the application fee and the other requested information.

33.     On January 24, 2018, long after Kokua submitted its business license application, Midway City publicly posted "Resolution 2018-04 - A RESOLUTION ADOPTING A NOTICE OF PENDING ORDINANCE AMENDMENTS IN CERTAIN SPECIFIED ZONES WITHIN THE CORPORATE LIMITS OF THE CITY OF MIDWAY, WASATCH COUNTY, UTAH." This resolution stated that the City was considering limiting the number of residents in a residential treatment facility to 16.

34.     On information and belief, the City adopted Resolution 2018-04 because it realized that it had failed to properly invoke the pending ordinance doctrine through Resolution 2017-28 in a manner that prohibited the Facility.

**The City Refuses to Take Final Decision on the Application**

35.     Despite having several months to make a final decision on Kokua's application, the City failed to formally approve or deny Kokua's application.  This failure to take final action on Kokua's application within a reasonable period of time constituted a de facto denial of Kokua's application.

36.     Consequently, on February 15, 2018, pursuant to Midway City Municipal Code (the "Code") § 7.01.210, Kokua appealed the City's failure to issue a business license to the City Council and demanded that the City immediately approve Kokua's application.

37.     The City Council never held a hearing on Kokua's appeal, in violation of the

process required in Code § 7.01.210.

38.     On March 9, 2018, Kokua and Probst sent the City an additional letter demanding

that the City take final action on Kokua's application and schedule a public hearing on Kokua's

appeal to the City Council.

39.     The City never responded to this correspondence.

**The City Takes Further Action to Discriminate Against the Facility**

40.     In further attempts to discriminate against the Facility, the City has refused to

allow Probst to connect his fire suppression system to the City's water line, unless he agrees to

pay the City an "impact fee" of $75,000.

41.     In addition, Probst has attempted to hire an excavation contractor to connect his

fire suppression system to the City's water line, but the City has refused to issue a permit for the

project.

42.     Specifically, at first, Probst engaged an excavation contractor from Heber City to

perform the work but the City would not approve the excavation team.  In fact, the City asked

Probst to find someone else to do the work.

43.     Later, Probst asked a local builder who regularly works on projects within City

limits to contact the City to see if the builder could obtain a permit to connect Probst's fire

suppression system to the City's water line.  The local builder agreed and used an engineering

firm to draw up plans for the project.  However, when the local builder's excavation crew

approached the City for approval, the City's lead engineer, Wes Johnson, denied permission and

threated the excavation crew, stating that if they proceeded with work on the Residence before the

City approved Kokua's application, he would black ball them and the City would not approve them for projects in the future.

44.    Consequently, Probst has been unable to connect his fire suppression system to the City's water line due to the City's discriminatory tactics.

**Passing of Ordinance 2018-12**

45.    On March 21, 2018, the City's Planning Commission held a hearing to consider Resolution 2018-04.  At the hearing, the City Attorney told the Planning Commission that it should recommend to the City Council that residential treatment facilities should be limited to no more than eight occupants (i.e. half of what was proposed in Resolution 2018-04) based upon a study ordered by the City.

46.    Rather than vote to recommend the 16 person limit proposed in Resolution 2018-04 or the eight person limit proposed the City Attorney, the Planning Commission voted to recommend to the City Council that it limit the total number of residents to no more than six.

47.    At the hearing, members of the Planning Commission expressed their clear desire to limit residential treatment facilities in a manner that would make them financially unviable and unable to operate in the City.

48.    At the hearing, Caleb Cottle of Kokua advised the Planning Commission that the City's proposed occupancy limits for residential treatment facilities would severely hamper, if not eliminate, the ability of such facilities to operate in the City.

49.    On April 6, 2018 the City Council posted notice for a public meeting to be held on April 11, 2018.  The agenda did not include consideration of Ordinance 2018-12.

50.     On April 10, 2018 the City Council amended the agenda to include consideration of Ordinance 2018-12.

51.     On April 11, 2018, the City Council held a hearing to consider proposed Ordinance 2018-12.

52.     At the hearing, the City Attorney advised the City Council that the Planning Commission recommended a occupancy limit of six residents for residential treatment facilities, but he recommended that the City adopt a limit of eight residents because there were many "families" living together in the City with at least eight residents.

53.     At the hearing, the City Council passed Ordinance 2018-12, limiting the number of disabled residents living together in a residential treatment facility to eight.

54.     In passing Ordinance 2018-12, the clear intent behind the City's actions was to treat disabled residents differently than other single family units, such as those living together in a familial relationship, and to severely limit the economic viability of residential treatment facilities operating in the City.

**The City Denies Kokua's Business License Application**

55.     On April 16, 2018 (more than four months after Kokua submitted its business license application), the City sent Kokua a notice purporting to "approve" Kokua's application for a Home Business License to operate a residential treatment facility at the Residence.

56.     The letter is in actuality a denial because the approval is subject to various unlawful conditions and only allows Kokua to operate the Facility with no more than eight residents.

57.     When the City denied Kokua's business license application to operate the Facility at the capacity permitted under state law, it failed to make a reasonable accommodation that was necessary to allow the Facility to operate because the City knew that limiting the maximum occupancy to eight residents would make it economically unviable to operate the Facility.

**The Denial of the Business License was Wrongful**

58.     When the City reviewed Kokua's application, it was obligated to apply the law that existed when Kokua first submitted its application for a business license on December 4, 2017.

59.     Probst and Kokua have a vested interest in the law as it existed at that time.

60.     At the time of Kokua's application, the Facility fully complied with all applicable zoning requirements and was entitled to approval.

61.     The zoning of the Residence is R-1-9 and R-1-15 (the "Residential Zones").

62.     At the time of Kokua's application, the Residential Zones provided that one-family dwellings, related accessory buildings, and home occupations were all permitted uses.

63.     At the time of Kokua's application, residential treatment facilities were not prohibited, nor did the Code limit the number of occupants in a residential treatment facility.

64.     Under Utah law, if a use is not expressly prohibited, then it is deemed permitted.

65.     Thus, the only occupancy limit on the Facility arises under state law which limits the number of occupants in a residential treatment facility to four residents per bedroom.

66.     At the time that Kokua submitted its application, the City knew the kind of facility that Kokua intended to run, and that the residents of the Facility were "disabled" or "handicapped" as defined by state and federal law.

67.     The City knew that the residents of the Facility intended to live together as a single housekeeping unit, sharing household responsibilities,  meals, activities, and chores, in accordance with the Code's definition for "Single Housekeeping Unit" in Code § 16.2.71.

68.     Even though the City knew that the Facility fully complied with all applicable zoning requirements and was entitled to approval, the City denied Kokua's application.

69.     Consequently, the City has disparately treated Kokua's application.

**Damages Caused by the City's Wrongful Conduct**

70.     Due to the City's refusal to timely approve Kokua's application and its refusal to reasonably accommodate the Facility, Kokua terminated its Lease.

71.     Due to the City's refusal to timely approve Kokua's application and its refusal to reasonably accommodate the Facility, Probst has incurred and will continue to incur lost rental income.

72.     Due to the City's refusal to timely approve Kokua's application and its refusal to reasonably accommodate the Facility, Probst incurred significant expenses in installing a fire suppression system.

73.     In addition, Probst desires to operate a residential treatment facility at the Residence, but with the maximum occupancy limit of eight residents imposed by Ordinance 2018-12, it is economically unviable to operate a residential treatment facility at the Residence. As a result, Ordinance 2018-12 is impeding Probst's ability to provide suitable housing for disabled residents that he is entitled to provide.

## FIRST CAUSE OF ACTION

### (The City's Denial of Kokua's Business License Application
### Violated the Federal Fair Housing Act ("FHA")
### and the Utah Fair Housing Act ("UFHA"))

74.     Plaintiff incorporates and realleges all prior paragraphs by reference.

75.     The City's denial of Kokua's business license application constitutes discrimination in that the City denied a residential opportunity to disabled persons on account of their disabilities.

76.     Alternatively, or in addition, the City refused or failed to make reasonable accommodations that were necessary to afford disabled persons an equal opportunity to use and enjoy a dwelling in a residential zone.

77.     The City's denial of Kokua's business license application, therefore, violated rights under the FHA, 42 U.S.C. § 3604, and the UFHA, Utah Code Ann.§ 57-21-1 et. seq.

78.     Due to the City's violations of the FHA and the UFHA, Probst has incurred and will continue to incur damages.

## SECOND CAUSE OF ACTION

### (Ordinance 2018-12 Facially and Intentionally Discriminates
### against the Disabled in Violation of the FHA and UFHA)

79.     Plaintiff incorporates and realleges all prior paragraphs by reference.

80.     Ordinance 2018-12 facially discriminates against disabled persons because it treats disabled persons differently than nondisabled persons who have a familial relationship.

81.     Code § 16.2.71 defines "Single Housekeeping Unit" as an unlimited number of "individuals living together sharing household responsibilities and activities which may include

sharing expenses, chores, eating evening meals together and participating in recreational activities and having close social, economic and psychological commitments to each other."

82.     Ordinance 2018-12 amended Code § 16.2.71 to provide that "[i]n the case of a Residential Facility for Elderly Persons or Persons with a Disability … a Single Housekeeping Unit may include not more than eight persons, together with a maximum of two additional qualified persons acting as resident staff, houseparents, or guardians."

83.     There are no similar maximum occupancy limits for other Single Housekeeping Units, such as for those where there is a familial relationship between residents.

84.     The City adopted Ordinance 2018-12 without a reasonable basis justifying an eight person occupancy limit.

85.     At the public hearings on Ordinance 2018-12, the City expressed its clear desire to limit the number of occupants to no more than eight because it would severely limit the economic viability of residential treatment facilities operating in the City.

86.     Plaintiff alleges on information and belief that the occupancy limit imposed by Ordinance 2018-12 was adopted by the City with the discriminatory intent of preventing Kokua and others from operating residential treatment facilities in the City.

87.     In support of the allegation of discriminatory intent, Plaintiff alleges that (a) after the City Planner and City Attorney initially told Plaintiff that the Facility could move forward and there was no City ordinance that could prevent the Facility from obtaining any necessary approvals, the City rushed to pass a "pending ordinance" in an attempt to block the Facility from obtaining a business license; (b) after Kokua submitted its business license, the City's staff was uncooperative and took steps, as set forth above, to ensure that operation of the Facility was

practically and economically unfeasible; and (c) the City has refused to allow Probst to connect his fire suppression system to the City's water line, and the City has imposed burdensome "impact fees" on Probst to dissuade Probst from operating the Facility.  Taken together, these actions demonstrate intent by the City to discriminate against and prevent the operation of the Facility.

88.     The City's efforts to prevent Kokua from operating the Facility prevent disabled persons from living in residential housing of their choice and are a violation of the FHA and UFHA.

89.     The adoption of the maximum occupancy limitation pursuant to Ordinance 2018-12 has damaged Plaintiff by preventing Plaintiff from obtaining income from a residential treatment facility for disabled persons at the Residence.

## THIRD CAUSE  OF ACTION

### (Ordinance 2018-12 Has a Discriminatory Effect and a Disparate Impact on Disabled Persons in Violation of the FHA and UFHA)

90.     Plaintiff incorporates and realleges all prior paragraphs by reference.

91.     Even if Ordinance 2018-12 is not intentionally or facially discriminatory against persons with disabilities, the maximum occupancy limit imposed by Ordinance 2018-12 will have a discriminatory impact on persons with disabilities.

92.     Code § 16.2.71 defines "Single Housekeeping Unit" as an unlimited number of "individuals living together sharing household responsibilities and activities which may include sharing expenses, chores, eating evening meals together and participating in recreational activities and having close social, economic and psychological commitments to each other."

93.     Ordinance 2018-12 amended Code § 16.2.71 to provide that "[i]n the case of a Residential Facility for Elderly Persons or Persons with a Disability … a Single Housekeeping Unit may include not more than eight persons, together with a maximum of two additional qualified persons acting as resident staff, houseparents, or guardians."

94.     There are no similar maximum occupancy limits for other Single Housekeeping Units, such as for those where there is a familial relationship.

95.     Unrelated disabled persons must live together because they are not capable of independent living as a result of their disabilities. Such disabled persons will not be able to live in a residential setting as opposed to an institutional setting in the City unless they are able to live in residential facilities for persons with a disability.

96.     The Facility will look and function the same as a large single family home. The residents of the Facility will live like most other families. They will share household responsibilities,  meals, activities, and chores.

97.     The eight person occupancy limitation imposed by Ordinance 2018-12 will severely limit, if not eliminate, new residential facilities for persons with a disability being built in the City.

98.     Ordinance 2018-12 will have a discriminatory impact on disabled persons in the City by effectively preventing them from being able to live in residential areas.

99.     The discriminatory impact of Ordinance 2018-12 on disabled persons is a violation of the FHA and UFHA.

100.    The discriminatory impact of Ordinance 2018-12 has damaged Plaintiff by preventing Plaintiff from obtaining income from the proposed residential facility for persons with a disability at the Residence.

101.    Plaintiff still desires to operate a residential facility for persons with a disability at the Residence but it would not be economically feasible as a result of the discriminatory impact of the maximum occupancy limits imposed by Ordinance 2018-12.

**FOURTH CAUSE OF ACTION**

**(Deprivation of Substantive Due Process)**

102.    Plaintiff incorporates and realleges all prior paragraphs by reference.

103.    Under Utah and Federal law, Kokua had the right to a business license and all other approvals necessary to operate its proposed residential treatment facility. Its proposed use meets the zoning requirements and other land use requirements in existence at the time of its application.  Midway ordinances in existence at the time of Kokua's application provide that residential treatment facilities for persons with disabilities are a permitted use.

104.    Under Utah law, a property owner is entitled to use its property in a manner permitted by existing land use regulations with some degree of assurance that the basic ground rules will not be changed in mid-stream and that government officials will correctly represent existing land use regulations as they apply to the property, and will not yield to public clamor or ignore existing law. Utah law protects property owners and businesses from shifting policies, whims of the moment, frightened and irrational public clamor, and requires governmental actors, such as the City and its agents, to act in good faith and to not reject a business license application

or other land use applications because the proposed land use triggers remorse over existing land and zoning regulations.

105.     Kokua had a fundamental constitutional right, under the United States and Utah Constitutions, to rely on existing law and to rely upon the City's representations of the application of law to be free from ad hoc special legislation and retroactive legislation.

106.     In failing to grant a business license, the City has employed its municipal powers as an instrument of oppression and harassment to deprive Kokua and its disabled residents of these and other valuable constitutional rights.

107.     The City has acted to hinder, delay, and ultimately thwart Kokua's business for reasons wholly unrelated to legitimate or rational governmental objectives and solely to yield to irrational public clamor and fear.

108.     Defendant's conduct as alleged herein is arbitrary, capricious and furthers no legitimate government end or purpose. Instead it is, upon information and belief, motivated by personal animus, unreasonable and irrational fear, discrimination against the disabled, desire for personal political gain, jealousy, spite, and/or ill will.

109.     The actions of the City, as alleged herein, were prompted by illegal and arbitrary motives and violated Plaintiff's right to substantive due process pursuant to Sections Seven and Twenty-Two of Article I of the Constitution of the State of Utah, and the Fourteenth Amendment to the United States Constitution.

110.     The actions of the City, as alleged herein, have damaged Plaintiff by preventing Plaintiff from obtaining rental income from a residential treatment facility for disabled persons at the Residence.

## FIFTH CAUSE OF ACTION

### (Deprivation of Procedural Due Process)

111.    Plaintiff incorporates and realleges all prior paragraphs by reference.

112.    Kokua had the right to the use and enjoyment of the Residence including the right to enjoy the profits therefrom, free from governmental interference, under the common law, the law of the State of Utah, and the policies, practices, customs, and ordinances of the City.

113.    Kokua was entitled to and did, in fact, reasonably base its decision to enter into the Lease, in reliance upon these laws, policies, practices, customs, ordinances, and upon the representations of the City officials.

114.    At the time of entering into the Lease, Kokua had no way of anticipating the City's arbitrary and drastic change of policy with respect to its own ordinances and the City's unlawful and intentional misinterpretation, misrepresentation, misapplication of its own development code.

115.    At the time of Kokua's application, it did not know, and could not have reasonably anticipated, that the City would deliberately violate state law by failing to comply with state law regarding residential treatment facilities for the disabled and by failing to follow its own appeal procedures could provide remedy for the deprivation of Kokua's constitutional rights.

116.    While the City's actions, as alleged herein, were premeditated and calculated to stop the Facility from operating, the post-deprivation procedures available to Kokua were nonexistent and insufficient to neutralize the City's procedural due process violations.

117.    Also, the post-deprivation procedures and remedies available to Kokua, if any, did not give Kokua the opportunity to be heard in a meaningful manner and to present evidence

relevant to the decision.  In fact, the City's intentional delay and failure to provide an appeal authority deprived Kokua of any post-deprivation process.

118.    Consequently, the City's official policies, practices, customs and actions, as alleged herein, deprived Kokua of property and liberty without due process of law in violation of the Fourteenth Amendment of the United States Constitution and Article I, Sections Seven and Twenty-Two of the Utah Constitution.

119.    The actions of the City, as alleged herein, have damaged Plaintiff by preventing Plaintiff from obtaining rental income from a residential treatment facility for disabled persons at the Residence.

## SIXTH CLAIM FOR RELIEF

### (Equal Protection)

120.    Plaintiff incorporates and realleges all prior paragraphs by reference.

121.    At all relevant times, Kokua had the constitutional right to be treated equally under the law as all other similarly situated individuals or entities. This right is secured by the Fourteenth Amendment of the United States Constitution and Article I, Sections Seven and Twenty-Four of the Utah Constitution.

122.    The City deprived Kokua of these rights by imposing different standards and requirements upon Kokua than it did for others, particularly residents of the City.  The City's differential treatment was not rationally related to any legitimate governmental objective and was based on discrimination and prejudice against the disabled.

123.    Kokua's differential treatment is also in violation of State law regarding residential treatment facilities for disabled persons as set forth in §10-9a-520 of the Utah Code.

124.    The actions of the City, as alleged herein, have damaged Plaintiff by preventing Plaintiff from obtaining rental income from a residential treatment facility for disabled persons at the Residence.

## SEVENTH CLAIM FOR RELIEF

### (Zoning Estoppel)

125.    Plaintiff incorporates and realleges all prior paragraphs by reference.

126.    The City, through its officers and authorized representatives, made a series of promises and representations to Probst upon which Probst reasonably relied in making decisions, including but not limited to entering into the Lease, as well as the construction of other improvements upon the subject property.

127.    The City, through its officers and official representatives, including the City attorney, represented that the Facility fully complied with all zoning requirements and City ordinances, that the proposed facility was a permitted use in the City and otherwise led the Plaintiff on so that Plaintiff reasonably relied upon such representations and has incurred substantial costs in development of the property.

128.    Plaintiff had a reasonable expectation that the City and its representatives would deal honestly with him and would not deliberately deceive him with respect to the land use requirements and business license requirements in the City. It would be manifestly unjust to allow the City to make knowing misrepresentations upon which Plaintiff relied and allow the City to escape the consequences of its misrepresentations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and requests relief as follows:

1.	For an order requiring the City to approve and grant all required licenses to operate the proposed residential treatment facility at the Residence.

2.	For an order pursuant to the FHA and UFHA requiring the City to make a reasonable accommodation allowing Plaintiff to operate the proposed residential treatment facility at the Residence.

3.	For an order declaring that the occupancy limit imposed by Ordinance 2018-12 is a violation of the FHA and UFHA.

4.	For an order enjoining the City from imposing the occupancy limit imposed by Ordinance 2018-12.

5.	For an order enjoining the City from retaliating or discriminating against the Facility in the future.

6.	For an order declaring that the City's conduct, as described herein, constitutes a deprivation of Kokua's substantive due process rights under 42 U.S.C. Section 1983.

7.	For an order declaring that the City's conduct, as described herein, constitutes a deprivation of Kokua's procedural due process rights, that Kokua has had no meaningful post-deprivation procedure, and that the City's conduct constitutes a violation of 42 U.S.C. Section 1983.

8.	For an order declaring that the City's conduct, as described herein, constitutes a deprivation of Kokua's right to equal protection under the law and constitutes a violation of 42 U.S.C. Section 1983.

9.      For an order declaring that the City made misrepresentations and promises upon which Plaintiff reasonably relied and that the City is now estopped from claiming that Kokua's application for a business license did not fully comply with the law, that the Facility is not a permitted use, and that ordinances enacted subsequent to the application for the business license bar the Plaintiff from use of its property in the manner desired.

10.     For an award of damages and a judgment against the City in an amount that will be proven at trial that will compensate Probst for lost profits and actual damages, including, but not limited to lost rental income in the amount of One Million Three Hundred Ninety-Two Thousand Dollars ($1,392,000).

11.     For an award of punitive damages as allowed by 42 U.S.C. § 3613(c) and 42 U.S.C. § 1983.

12.     For an award of Plaintiff's reasonable costs and attorneys' fees incurred in this action and in prior efforts to obtain a license to operate the Facility at the Residence.

13.     For such other relief as the Court deems proper.

Dated:  April 25, 2018

STOEL RIVES LLP


/s/ *R. Chad Pugh*
David L. Mortensen
R. Chad Pugh

Attorneys for Plaintiffs